UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

DAVID BRADEN and DALE BROWN,
individually and on behalf of all others similarly
situated,

          Plaintiffs,

v.

FOREMOST INSURANCE COMPANY GRAND
RAPIDS, MICHIGAN,

          Defendant.

Case No. 4:15-cv-04114-SOH

**DECLARATION OF R. MARTIN WEBER, JR. IN SUPPORT OF:
(1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION
SETTLEMENT, CLASS ACTION SETTLEMENT, CLASS CERTIFICATION FOR
SETTLEMENT PURPOSES, APPOINTMENT OF CLASS REPRESENTATIVES AND
APPOINTMENT OF CLASS COUNSEL AND ENTRY OF FINAL ORDER AND
JUDGMENT; (2) PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR FINAL APPROVAL; AND (3) CLASS COUNSEL'S MOTION FOR ATTORNEYS'
FEES AND COSTS RELATED TO THE STIPULATION OF SETTLEMENT AND
<u>REQUEST FOR FEE AWARD TO CLASS REPRESENTATIVES</u>**

I, R. Martin Weber, Jr., hereby declare under penalty of perjury as follows:

1. I am an individual over the age of 18. I am an attorney with the law firm of Crowley Norman LLP in Houston, Texas. I am Counsel of Record, Counsel for Plaintiffs and Class Counsel for the Class. I have personal knowledge of the facts set forth below gained through my representation of the Plaintiffs and the Class herein, and if called to testify I could and would do so competently. I submit this declaration in support of:

   (a) Plaintiffs' Motion For Final Approval of Class Action Settlement, Class Action Settlement, Class Certification For Settlement Purposes, Appointment of Class Representatives and Appointment of Class Counsel and Entry of Final Order and Judgment;
   (b) Plaintiffs' Memorandum of Law In Support Of Motion For Final Approval; and
   (c) Class Counsel's Motion For Attorneys' Fees and Costs Related to the Stipulation of Settlement and Request For Fee Award to Class Representatives.

2. A true and correct copy of the Stipulation of Settlement ("Settlement") reached between Plaintiffs and Defendant Foremost Insurance Company Grand Rapids, Michigan ("Defendant" or "Foremost") was previously filed with the Court as Dkt. 108-1.

3. A prior lawsuit involving similar claims was filed in the Circuit Court of Miller County, Arkansas, and removed to this Court on January 2, 2014, and styled Cause No. 4:14-cv-04002-SOH; *William Keller, Debra Keller and Peggy Byrge v. FCOA, LLC d/b/a Foremost Insurance Company*; In the United States District Court, Western District of Arkansas, Texarkana Division (hereafter "*Keller*"). While that case was pending, as Class Counsel in *Keller* we obtained documents and took multiple depositions around the country and moved for class certification. After almost two years of litigation, Foremost obtained a dismissal of one plaintiff, and entered into an individual settlement with the other plaintiffs in order to bring that matter to an end before the Court ruled on the motion for class certification.

4. On December 10, 2015, Plaintiffs filed their Original Complaint in this Court (Dkt. 1), asserting the same claims against Foremost related to its depreciation of labor costs that had been asserted in *Keller*.

5. Plaintiffs asserted claims on behalf of themselves and "[a]ll persons and entities that received 'actual cash value' payments, directly or indirectly, from Foremost for loss or damage to a dwelling or other structure located in the State of Arkansas, such payments arising from events that occurred on or after November 21, 2008, where the cost of labor was depreciated." Complaint, Dkt. 1, at 7; Brief in Support of Motion for Class Certification, Dkt. 44, at 21.

6. The class on whose behalf Plaintiffs brought suit included those insureds who purchased both RCV and ACV policies from Foremost. Complaint, Dkt. 1; Brief in Support of

2

Motion for Class Certification, Dkt. 44, at 4-22. It was Class Counsels' position that insureds covered under RCV and ACV policies are similarly situated, as an insured who is covered under a RCV policy, but chooses not to complete his repair, is treated the same as an insured covered under an ACV policy. Discovery appeared to confirm that Foremost's practice was to make an initial ACV payment (which deducted depreciation) to both RCV and ACV policyholders, followed by a second RCV payment (which included previously-deducted depreciation) to RCV policyholders only after the insured repaired the covered property.

7. After significant additional written discovery was completed in this case (in addition to the discovery completed in the earlier *Keller* case), and after numerous additional depositions were taken, Plaintiffs filed a contested motion for class certification with 64 supporting exhibits. (Dkts. 44, Motion; Dkt. 45, 46 and 47, Exhibits; Dkt. 68, Reply with 7 additional exhibits). Defendants filed their response and additional related motions. (Dkt. 58, Motion; Dkt. 59 Objections to Evidence; Dkt. 60, Motion to Exclude Evidence; Dkt. 61, Memorandum of Law in Support; Dkt. 67, Plaintiffs' Response). Numerous other motions were filed, and responses and replies were filed, including Defendants' Motion for Judgment on the Pleadings (Dkt. 49, Motion; Dkt. 50, Memorandum of Law in Support; Dkt. 54, Response; Dkt. 64, Reply); Defendants' Motion to Strike Declaration of Saul Solomon (Dkt. 77, Motion; Dkt. 78, Memorandum of Law in Support; Dkt. 81, Response; Dkt. 88, Reply); and Defendants' Motion to Exclude Saul Solomon Declaration (Dkt. 90, Motion; Dkt. 91, Memorandum of Law in Support). Hundreds of hours were spent on motion practice alone.

8. While those motions were pending, throughout the Summer and Fall of 2017, the parties held informal settlement discussions which included an analysis of the potential damages, and continued their individual longstanding analyses of claims data. These settlement discussions

culminated with a mediation session on August 9, 2017 with distinguished Texarkana attorney John Greer.

9. A generalized framework for the Settlement was achieved at mediation. However, an additional six weeks of negotiation followed as the parties continued to work through areas of disagreement. A Memorandum of Understanding was executed on September 22, 2017, which led to significant additional exchanges as the parties negotiated the language of the effectuating documents. The final version of the Stipulation of Settlement, with all supporting exhibits, was finally executed on April 27, 2018.

10. Class Counsel attempted to ascertain the collective value of the settlement benefits being offered to Class Members. In attempting to calculate the value of the proposed settlement payments to class members, we had certain information known to us, and certain assumptions that were provided to us by the Defendants based on data available to Defendants. Two assumptions provided to us were that, for the primary periods of 11/21/08 - 12/9/10 and 12/10/10 - 10/1/13, 42% of the total labor depreciation was attributable to the former, and 58% attributable to the latter time period.

11. During the case, we were provided two spreadsheets with electronic claims data (one Xactimate, and one Symbility). There appeared to be 3,057 unique claims with $2,260,213 in total Labor Depreciation on those two spreadsheets (excluding claims paid at policy limits and claims paid with no Labor Depreciation because the total claim was $2500 or less). We were also provided a summary of approximately 1,500 claims without electronic data; using $930 as the average claim value, I estimated that there could be as much as $1,395,000 in Labor Depreciation attributable to claims without electronic data. Accordingly, the total of the electronic and non-electronic claims information Total Labor Depreciation) was estimated to be

$3,655,213. Based on reviews of data, we made the assumption that 10% of Total Labor Depreciation had been fully paid out to the Class, or $365,521; that would leave 90% of Total Labor Depreciation, or $3,289,691, as unpaid.

12. Based on the settlement framework negotiated, we calculated that the amounts that may be available to each of the four groups are as follows:

|  | 12/10/2010-10/01/2013 | 11/21/2008-12/09/2010 |
|---|---|---|
| **Penalty Only Settlement Formula** | 10% of LD that was paid 10%*58%*$365,521 | 7.5% of LD that was paid 7.5%*42%*$365,521 |
| Value | $21,200.22 | $11,513.91 |
| **Regular (unpaid LD) Settlement Formula** | 100% of unpaid LD 100%*58%*$3,289,691 | 75% of unpaid LD 75%*42%*$3,289,691 |
| Value | $1,908,020.78 | $1,036,252.67 |
| **TOTAL ESTIMATED MONETARY VALUE OF BENEFITS OFFERED TO CLASS MEMBERS** | **$2,976,987.57** | |

Using the assumptions provided, and using the known data, we estimate that the monetary benefits offered to Class Members are approximately $2,977,000. Plaintiffs' Counsel believes this is an excellent result for class members.

13. Further, Foremost has agreed to pay attorneys' fees and costs in the case *in addition to* the relief provided to the Class. The agreed amount for attorneys' fees and costs is $850,000. When combined with the amount paid to the Class, the total monetary benefit is estimated to be over $3.827 million (excluding the additional amounts of the costs of administration and the incentive awards to the Plaintiffs), an amount that appears to exceed 100% of the labor depreciation at issue in the case. The attorneys' fees and costs of $850,000 represent approximately 28.6% of the estimated amount available to the Class ($2,976,987); and

represents 22.2% of the total monetary benefit ($3,826,987) estimated to have achieved for the common benefit of the Class.[1]

14. The Settlement Agreement was not arrived at until after Class Counsel had (1) conducted an extensive and comprehensive pre-suit investigation relating to the events and transactions underlying Plaintiffs' claims; (2) reviewed and analyzed voluminous amounts of publicly-available documents; (3) consulted with experts about the novel and difficult issues raised in this action; (4) thoroughly researched the law and facts pertinent to Plaintiffs' claims and the defenses raised by Foremost, and assessed the risks of prevailing on each of the respective claims on pre-trial motions and at trial; (5) prepared extensive class certification briefing; (6) conducted fact and expert discovery; (7) thoroughly evaluated the risks of ongoing litigation, including Defendants potential success with their appeal; (8) and engaged in extensive motion practice and expert discovery at the discovery and class certification stage. In addition, Class Counsel relied on their previous experience and innumerable man-hours in other insurance class action litigations. As a consequence, we had sufficient information at our disposal before entering into settlement negotiations. Consequently, we were able to adequately assess the strengths and weaknesses of Plaintiffs' case and balance the benefits of settlement against the risks of further litigation.

15. My co-counsel and I are not aware of any other Arkansas state or federal lawsuits brought against Foremost in which the underlying claims relate to labor depreciation, other than the dismissed *Keller* case.

---

[1] The numbers and percentages set forth herein are slightly different than the declaration provided in connection with the Motion for Preliminary Approval. Dkt. 109-3. Upon rechecking calculations, it was determined that non-material mathematical errors were made in arriving at the number and percentages set forth on the prior declaration. Those have been corrected in this version.

16. Objections and requests for exclusions were to be mailed to the Administrator. Based on the declaration and reports from the Administrator, there have been zero objections received, and only three requests for exclusion. The mailed notice program effectuated by the Administrator reached in excess of 82% of the Class Members to whom notice was directed. The Publication Notice program in my experience would increase the reach of the mailed notice program. In my experience, the notice program was successful, and met all due process concerns.

17. Class Counsel undertook this action on a contingent fee basis (with the amount of any fee being subject to Court approval), assuming a substantial risk that the litigation would yield no recovery and leave us not only uncompensated, but losing all amounts invested in this case. Class Counsel are comprised of experienced and engaged law firms; however, when Class Counsel undertakes major litigation such as this, it necessarily limits Class Counsel's ability to undertake other complex litigation. I am familiar with the work and experience of each firm, and each of Class Counsel are highly experienced in prosecuting class action, commercial, mass tort, securities and other complex litigation. Class Counsel have routinely taken on large corporations in contingent fee litigation where the outcome –and payment of fees—is unknown, including contested cases resulting in class certification. Each firm has taken an active role in prosecuting this action, achieving this Settlement, and preparing for the Final Approval Hearing. This Court has previously found, in similar class action cases, that each of the Class Counsel are adequate to serve as Class Counsel, and we respectfully request the same finding to be made here.

18. Based on my consultation with my co-counsel, the attorneys prosecuting this matter spent approximately $193,367.50 in expenses for expert and consulting fees, lodging and transportation for court hearings and meetings, legal research costs and electronic discovery

hosting costs, and other related usual and customary expenses. Class Counsel have an internal agreement as to how the fee and cost award should be divided among the various firms, and do not request the Court to take part in the ultimate division of any fee awarded. This procedure has received approval in numerous class actions.

19. There was no collusion in the negotiation of the attorney fee provision in this Settlement. The attorney fee was not negotiated until after the substantive terms of the settlement had been agreed upon.

20. The Settlement provides that Foremost will pay an incentive award of up to $10,000 to each Class Representative, subject to Court approval. This request is reasonable in light of the risks the Class Representatives assumed on behalf of the Class and the efforts they expended in representing the Class. The Class Representatives agreed to press this unique case on behalf of thousands of insureds, knowing that Defendants would dispute their claims and attempt to dispose of this case as a matter of law. Moreover, the Class Representatives devoted time and effort representing the Class through discovery, including giving depositions. That necessitated significant preparation in addition to the day expended in the deposition itself. The Class Representatives agreed to serve with full knowledge that there was a potential risk of financial detriment and demands on their time. It is my belief that the requested incentive award is fair and reasonable and, given the circumstances of this litigation, a larger award could easily be justified. The incentive awards requested here are aligned with the amounts requested and awarded by this Court and other courts in similar litigation with similar financial results.

21. Thus, for purposes of this settlement, Plaintiffs request that the Court approve the terms of the settlement and enter a final order.

I declare under penalty of perjury under the laws of the State of Texas and the United States of America that the foregoing is true and correct.

Executed on September 28, 2018 in Houston, Harris County, Texas.

R. Martin Weber, Jr.